IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hossein Imani, | No. CV 26-01933 PHX DJH (CDB) |
| Petitioner, | **REPORT AND RECOMMENDATION A 221 181 296** |
| v. | |
| John Cantu, et al., | |
| Respondents. | |

**TO THE HONORABLE DIANE J. HUMETEWA:**

Petitioner Hossein Imani, who is incarcerated at the Eloy Detention Center in Eloy, Arizona, seeks relief pursuant to 28 U.S.C. § 2241. Petitioner is represented by counsel in this matter.

**I.    Background**

Petitioner is a native and citizen of Iran. Petitioner entered the United States on January 24, 2025, and shortly thereafter encountered United States Customs and Border Protection agents near Andrade, California. (ECF No. 1 at 6). Petitioner was detained and transported to the Yuma Enhanced Centralized Processing Center, where he confirmed that he was without legal documents to enter or remain in the United States. (*Id.*). Petitioner was served with Form I-860 (Notice and Order of Expedited Removal) and Form I-296 (Notice to Alien Ordered Removed), placing him in expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1), because he was apprehended within 14 days of entry and within 100 miles of the United States land border. (*Id.*). Petitioner expressed a fear of being returned to Iran and was referred to an asylum officer for a "credible fear interview,"

which was conducted February 12, 2025. (ECF No. 1 at 7). During the interview Petitioner advised:

- He converted from Islam to Christianity approximately seven years ago.
- Approximately four years ago, his neighbors reported to the IRGC [Islamic Revolutionary Guard Corps] that he had stopped attending the mosque.
- IRGC agents came to his home and took him to the mosque, where he admitted he had converted to Christianity.
- The agents initially told him he would be given time to reconsider and revert to Islam.
- Over the following year, the threats escalated into explicit death threats if he did not renounce Christianity and return to Islam. Petitioner fled Iran in fear of his life.

(*Id.*).

The asylum officer determined Petitioner had established a credible fear of persecution and torture if removed from the United States to Iran, i.e., found a significant possibility that he could establish eligibility for asylum, withholding of removal, or protection against the Convention Against Torture, and Petitioner was placed in full removal proceedings. (*Id.*).

In April of 2025, Petitioner, through his prior counsel, filed a motion seeking a custody redetermination in the Immigration Court, seeking a bond hearing before an immigration judge. (ECF No. 1 at 8). The motion noted Petitioner's lack of criminal history, his stable housing with an uncle in Georgia (who is a United States citizen), and his well-founded fear of return to Iran, as grounds for finding he was not a flight risk or danger to the community if released. (ECF No. 1 at 8-9). The Immigration Court never ruled on that motion. (ECF No. 1 at 8).

On July 30, 2025, Petitioner filed a Form I-589, i.e., an application for asylum and withholding of removal. (ECF No. 1 at 7). His application sets forth his fear of persecution in Iran based on his religious conversion—he asserts this is a ground of persecution

"expressly protected under INA [Immigration and Nationality Act] § 101(a)(42), 8 U.S.C. § 1101(a)(42)." (ECF No. 1 at 7-8).[1]

Petitioner again sought a bond hearing on March 12, 2026. (ECF No. 1 at 8). On March 18, 2026, the Immigration Judge denied the request for a bond hearing, stating:

> The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered:
>  ☑ Denied, because Based on the plain language of section 235(b)(2)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1225(b)(2)(A) (2018), Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission. See Matter of YAJURE HURTADO, 29 I&N Dec. 216 (BIA 2025).[2]
> Alternatively, if the court had jurisdiction the court would deny bond as the Court finds that the respondent has failed to meet his burden of proving he is not a flight risk if released on bond, finds that the respondent is properly detained without bond, and declines to set bond in his case.

(ECF No. 1-1).

---

[1] The Executive Office of Immigration Review's case information website states: "Case information is unavailable" with regard to Petitioner's application for asylum. See https://acis.eoir.justice.gov/en/, last visited May 4, 2026.

[2] The Board of Immigration Appeals' decision in *Hurtado* is not binding on this or any other federal district court. As the Supreme Court recently emphasized, "courts must exercise independent judgment in determining the meaning of statutory provisions" and "need not ... defer to an agency interpretation of the law …." *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 394, 403-04, 412-13 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority."). Accordingly, the federal district courts within the jurisdiction of the Ninth Circuit Court of Appeals have generally determined that an IJ's reliance on *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), involving immigrants who have lived within the United States prior to being placed in removal proceedings pursuant to 8 U.S.C. § 1226, is not dispositive with regard to whether an immigrant is entitled to bond or a bond hearing. *See, e.g., Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1133 (D. Nev. 2025); *Rafael R. M. v. Warden, Golden State Annex Det. Facility*, No. 26-cv-00902, 2026 WL 730999, at *5 (E.D. Cal. Mar. 16, 2026), *report and recommendation adopted*, 2026 WL 812750 (E.D. Cal. Mar. 24, 2026). *See also Restrepo v. Jamison*, ___ F. Supp. 3d ___, 2026 WL 141803, at *3 (D. Pa. 2026) ("The Court reminds the parties that it is not bound by the BIA's interpretation of Sections 1225 and 1226. []. In fact, the vast majority of Section 2241 habeas petitions decided in the wake of *Hurtado*, and all of those addressed by this Court up to this point, have rejected the BIA's interpretation of these INA provisions and granted habeas relief.").

## II.   Claims for Relief

Petitioner asserts his "continued detention without an individualized custody determination violates the Due Process Clause of the Fifth Amendment," arguing that "[r]egardless of the statutory basis for his initial detention, the Constitution does not permit the government to hold a person indefinitely—without a hearing, without a ruling, and without any meaningful process …." (ECF No. 1 at 3). Petitioner contends his procedural due process rights have been violated because no individualized custody determination has been made, and because the government cannot justify his continued detention, and because the immigration court failed to act on his custody determination request submitted in April of 2025. Petitioner further asserts that his prolonged civil detention without an individualized determination violates his right to substantive due process. (ECF No. 1 at 13-17). Petitioner seeks an order requiring his "immediate release from custody or, in the alternative, an order requiring a constitutionally adequate custody hearing within fourteen days." (ECF No. 1 at 3).

In their response filed April 20, 2026, Respondents contend Petitioner's detention is mandatory and he is not eligible for release on bond or recognizance, or under terms of supervision. Respondents argue:

> … mandatory detention is the rule for aliens who have never been *lawfully admitted*. *See* 8 U.S.C. § 1225(b)(2)(A) ("Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title [Section 240]." (emphasis added)); 8 C.F.R. § 235.3(b)(1)(ii) (mirroring Section 1225(b)(2) detention mandate); *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (holding that Section 1225(b)(2) "mandate[s] detention of aliens throughout the completion of applicable proceedings and not just at the moment those proceedings begin").
>
> Recently, the Fifth Circuit decided this issue in Respondents' favor. In *Buenrostro-Mendez v. Bondi*, ___ F.4th ___ 2026 WL 323330 (5th Cir. Feb. 6, 2026), the Fifth Circuit held that *unadmitted* applicants for admission apprehended *within* the United States are seeking admission and are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). 2026 WL 323330, at *1. The Fifth Circuit reversed the district courts' orders granting the habeas

petitions, which directed the respondents to provide petitioners with bond hearings. *Id.* The Seventh Circuit, deciding a motion to stay pending appeal in a matter arising *in a different context*, and on the basis of a "preliminary record," determined that the government was "not likely to succeed on the merits" of its argument that aliens *present* in the United States without admission are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061-62 (7th Cir. 2025). The Ninth Circuit will hear argument on this issue on March 4, 2026, in *Rodriguez Vazquez v. Bostock*, No. 25-6842 (9th Cir.).[3]

Judge Liburdi adopted Respondents' position in *Chavez v. Noem*, No. 26-cv-00323-PHX-MTL (D. Ariz. Feb. 9, 2026). In that decision, Judge Liburdi found persuasive the Fifth Circuit's reasoning in *Buenrostro-Mendez* and adopted it, finding that "a person *who entered the United States illegally* and is clearly and beyond a doubt not entitled to admission, is subject to mandatory detention under § 1225(b)(2)(A)." *Id.* at 4. … Prior to the *Buenrostro-Mendez* decision, several other district courts had also agreed with Respondents' position. *See Chavez v. Noem*, [801]_ F. Supp. 3d_[1133], No. 3:25-cv-02325-CAB, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025), *appeal docketed sub nom. Sixtos Chavez v. Noem*, No. 25-7077 (9th Cir. Nov. 7, 2025) [also citing an unpublished case from the District of Nebraska, an unpublished case from the Eastern District of Wisconsin, three unpublished cases from the Western District of Louisiana, an unpublished opinion from the Eastern District of Missouri and one from the Southern District of Texas, a published opinion from the Central District of California, a published opinion from the Eastern District of California, an unpublished opinion from the Southern District of New York, and an unpublished opinion from the Western District of New York].

*Respondents acknowledge, however, that the majority of district courts, including this one, have rejected their position. See*, e.g., *Echevarria v. Bondi*, No. 2:25-cv-03252-PHX-DWL, 2025 WL 2821282 (D. Ariz. Oct. 3, 2025); *Barco Mercado v. Francis*, No. 25-cv-6582 ___ F. Supp. 3d ___, 2025 WL 3295903, at *13 (S.D.N.Y. Nov. 26, 2025) (*listing 350 decisions that found for the habeas petitioner*).

(ECF No. 8 at 4) (emphasis added).

Respondents contend that in Petitioner's circumstance even "prolonged" detention does not implicate due process and require a bond hearing.

---

[3] The oral argument in *Rodriguez Vasquez v. Bostok* occurred six weeks prior to the filing of the response.

In his reply, Petitioner asserts:

> Respondents do not address the Immigration Judge's alternative holding that Petitioner "failed to meet his burden of proving he is not a flight risk." Exhibit A. Under *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), the burden rests with the government—not the detainee—to demonstrate by clear and convincing evidence that detention is necessary. The IJ applied the wrong standard. The government does not defend it.

(ECF No. 9 at 2). Petitioner also notes: "The government has effectively conceded the outcome on the statutory question. Respondents acknowledge that 'the majority of district courts, including this one, have rejected their position.'" (ECF No. 9 at 2)

### III.    Analysis

The United States Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). The right to be free from physical restraint is "at the heart of the liberty" guaranteed by the Due Process Clause of the Fifth Amendment. *E.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Although "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process," such detention must still comport with the detainee's right to due process. *Demore v. Kim*, 538 U.S. 510, 523 (2003). *See also Wong Wing v. United States*, 163 U.S. 228, 235-37 (1896).

There is no statutory requirement that a detained noncitizen be given a bond hearing regarding the continuation of their detention pending the finality of their removal proceedings. The Ninth Circuit Court of Appeals has not squarely addressed the issue presented herein: whether the Fifth Amendment's Due Process Clause requires a bond hearing pending the finality of removal proceedings for a noncitizen detained shortly after crossing the border without inspection, who was initially placed in expedited removal proceedings but moved to regular removal proceedings after an asylum officer found they had stated a credible fear of being returned to their home country, and who has filed an application for asylum and is being detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii).[4] The

---

[4] (b) Inspection of applicants for admission
(1) Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled

First, Fifth, and Eighth Circuit Courts of Appeals have reached different conclusions regarding this issue. *See Alves v. U.S. Dep't of Just.*, No. 25-cv-306, 2025 WL 2629763, at *3 (W.D. Tex. Sept. 12, 2025) (discussing cases from the First, Fifth, and Eighth Circuit). *See also Black v. Almodovar*, 156 F.4th 171, 173-74 (2d Cir. 2025) (Nardini, J., dissenting from denial of rehearing en banc).[5]

However, the federal district courts have generally held that the Due Process Clause does not allow for indefinite detention of a noncitizen during the pendency of their removal proceedings without some type of individualized assessment. *See infra* at 9-10, 13-14. In the dissent in *Jennings v. Rodriguez*, 583 U.S. 281, 299-308 (2018), Justice Breyer argued the indefensibility of allowing prolonged, unconsidered detention of noncitizens:

> It is clear that the Fifth Amendment's protections extend to "all persons within the territory of the United States." ... But the Government suggests that those protections do not apply to asylum seekers or other arriving aliens because the law treats arriving aliens as if they had never entered the United States; hence they are not held within its territory.
>
> This last-mentioned statement is, of course, false. All of these noncitizens are held within the territory of the United States at an immigration detention facility. ... At most one might say that they are "constructively" held outside the United States: the word "constructive" signaling that we indulge in a "legal fiction," shutting our eyes to the truth. But once we admit to uttering a legal fiction, we highlight, we do not answer, the relevant question: *Why* should we engage in this legal fiction here?
>
> The legal answer to this question is clear. We cannot here engage in this legal fiction. No one can claim, nor since the time of slavery has anyone to my knowledge successfully claimed, that persons held within the United States are totally without constitutional protection. … the Constitution does not authorize arbitrary detention. And the reason that is so is simple: Freedom

---

(B) Asylum interviews

*** 

(ii) Referral of certain aliens
If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien shall be detained for further consideration of the application for asylum.

[5] Judge Nardini described an "intercircuit incoherence," regarding what process is due aliens subject to mandatory detention during removal proceedings, as "more than the usual circuit split" and concluded the "all-over-the-map holdings" are "a circuit splat" that "only the Supreme Court can clean up." *Black v. Almodovar*, 156 F.4th 171, 173-74 (2d Cir. 2025) (Nardini, J., dissenting from denial of rehearing en banc).

from arbitrary detention is as ancient and important a right as any found within the Constitution's boundaries. *See Zadvydas*, *supra*, at 720-721 [] (Kennedy, J., dissenting) ("inadmissible aliens" who are "stopped at the border" are "entitled to be free from detention that is arbitrary or capricious").

583 U.S. at 331-32 (emphasis in original).

On remand from *Jennings*, the Ninth Circuit Court of Appeals determined the Supreme Court had chosen "to answer *only* the question *whether the statutory text itself* included a limit on prolonged detention or a requirement of individual bond hearings." *Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018) (emphasis added).[6] Citing the United States Supreme Court's opinion in *United States v. Salerno*, 481 U.S. 739, 755 (1987), the Ninth Circuit stressed that "[a]rbitrary civil detention is not a feature of our American government," and expressed "grave doubts that any statute that allows for *arbitrary* prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Id.* at 256 (emphasis added).

Although 8 U.S.C. § 1225(b)(1)(B)(ii), the statute under which Petitioner is detained, provides that a noncitizen who is not under a final order of removal "shall" be detained "for further consideration of the application for asylum," the federal courts have repeatedly held that even statutorily-authorized detention of a noncitizen in removal

---

[6] The *Rodriguez* panel described the issue before the Supreme Court in *Jennings* as follows: In *Jennings v. Rodriguez*[] 138 S. Ct. 830 [] (2018), the Supreme Court held that we misapplied the canon of constitutional avoidance to hold that certain immigration detention statutes, namely 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), implicitly contain a reasonableness determination after which due process concerns require that persons in prolonged mandatory detention are entitled to individualized bond hearings and possibly, conditional release. Although the Court sought and received briefing on the straightforward constitutional question, i.e. without the implicit requirement of due process for persons in arbitrary prolonged detention, whether these detention statutes are constitutional, it declined to reach the constitutional question. *The Court instead chose to answer only the question whether the statutory text itself included a limit on prolonged detention or a requirement of individual bond hearings.*
*Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018) (emphasis added).

proceedings must comport with due process, as evaluated by the federal courts pursuant to their power to award writs of habeas corpus. *See Boumediene v. Bush*, 553 U.S. 723, 797 (2008) (holding that habeas corpus applied to detainees who were classified as enemy combatants and stating "few exercises of judicial power are as legitimate or necessary as the responsibility to hear challenges to the authority of the Executive to imprison a person."), *cited in Chekhovskii v. Scott*, No. 2:25-cv-02550, 2026 WL 353265, at *3-4 (W.D. Wash. Feb. 9, 2026). The Ninth Circuit Court of Appeals has recognized that prolonged civil immigration detention without meaningful individualized safeguards raises serious constitutional concerns and warrants relief when detention becomes unreasonable as applied to a particular individual. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1142-44 (9th Cir. 2013); *Tijani v. Willis*, 430 F.3d 1241, 1247-49 (9th Cir. 2005).

A majority of the federal district courts that have considered the question have concluded that at some point prolonged detention under § 1225(b)(1), without an individualized bond hearing, violates the detainee's right to due process. *See, e.g.*, *Rash v. LaRose*, ___ F. Supp. 3d ___, No. 26-cv-0008, 2026 WL 249324, at *3 (S.D. Cal. 2026); *Larrazabal-Gonzalez v. Mason*, ___ F. Supp. 3d ___, No. 26-cv-00049, 2026 WL 221706, at *5 (S.D.W. Va. 2026) ("The Constitution does not tolerate what would be plainly unlawful in the criminal context simply because the detention is labeled civil. Nor does the Constitution withhold its protections when a person is an immigrant."); *Sadeqi v. LaRose*, 809 F. Supp. 3d 1090, 1093 (S.D. Cal. 2025) ("This Court agrees with the majority position that a petitioner detained under [§] 1225(b)(1) may assert a due process challenge to prolonged mandatory detention without a bond hearing."); *Fils-Aime v. FCI Berlin, Warden*, 808 F. Supp. 3d 218, 224 (D.N.H. 2025); *Rashid v. Trump*, 807 F. Supp. 3d 349, 363 (D. Vt. 2025); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116-17 (W.D. Wash. 2019) ("prolonged mandatory detention pending removal proceedings, without a bond

hearing, will—at some point—violate the right to due process."); *Leonteva v. Noem*, No. 26-cv-00043, 2026 WL 711766, at *5 (S.D. Ind. Mar. 13, 2026); *A.A. v. Warden, Stewart Detention Cntr.*, No. 24-cv-191, 2026 WL 1105047, at *7 (M.D. Ga. Feb. 13, 2026); *Mashchenko v. Rokosky*, No. 25-cv-12387, 2026 WL 185204, at *3 (D.N.J. Jan. 25, 2026); *Rodriguez Chavez v. Holman*, No. 25-cv-00267, 2026 WL 136902, at *3 (W.D. Pa. Jan. 20, 2026); *Maksin v. Warden, Golden State Annex*, No. 25-cv-00955, 2025 WL 2879328, at *3 (E.D. Cal. Oct. 9, 2025).

There are some federal district judges who have disagreed: in *Mamedova v. Noem*, Arizona District Judge Lanza concluded a petitioner in a circumstance similar to Petitioner's was not entitled to a bond hearing. *See* No. 25-cv-4619, 2026 WL 1162282 (D. Ariz. Apr. 29, 2026).[7] *See also Savin v. Rivas*, No. 26-cv-1120, 2026 WL 1162384 (D. Ariz. Apr. 29, 2026).

---

[7] Judge Lanza found and concluded:

In the Court's view, [*Department of Homeland Security v. Thuraissigiam*[, 591 U.S. 103 2020]] underscores the conclusion reached in *Ibarra-Perez*. Indeed, "[w]hile *Thuraissigiam* was decided in the admission context, it cited and reaffirmed the continuing vitality of *Mezei*, which addressed the issue of detention." *Gonzales Garcia v. Rosen*, 513 F. Supp. 3d 329, 333 (W.D.N.Y. 2021). Accordingly, since *Thuraissigiam* was decided, many district courts—albeit not all (and perhaps not even most) district courts—have concluded that an arriving alien subject to statutorily mandated detention under §§ 1225(b)(1) or 1225(b)(2) does not have a constitutional right to a bond hearing. *See*, *e.g.*, *Korneva v. Rokosky*, 2026 WL 851591, *1 (D. Ariz. 2026); *Palma v. Arteta*, ___ F. Supp. 3d ___, 2026 WL 697015, *11-12 (S.D.N.Y. 2026); *Leon Alcazar v. Cantu*, 2025 WL 2548698, *12-14 (D. Ariz. 2025), *adopted by* 2025 WL 2304357 (D. Ariz. 2025); *Mendoza-Linares v. Garland*, 2024 WL 3316306, *2 (S.D. Cal. 2024); *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 676-79 (S.D. Tex. 2021); *Gonzales Garcia*, 513 F. Supp. 3d at 336. *See generally Doe v. Bondi*, 2025 WL 3516292, *5-6 (D. Colo. 2025) (surveying the relevant authorities, noting that "[s]ome courts have held that, at some point, due process requires a noncitizen subject to prolonged detention under Section 1225(b) be given an individualized bond hearing before an immigration judge...[b]ut other courts have held that due process imposes no time limit or hearing requirement when an alien is subject to mandatory detention under Section 1225(b) while removal proceedings are pending …").

*Mamedova v. Noem*, No. 25-cv-04619, 2026 WL 1162282, at *3 (D. Ariz. Apr. 29, 2026).

The Court could consider the argument presented in *Padilla v. U.S. Immigration and Customs Enforcement*, with regard to the applicability of *Thuraissigiam* in this context:

> The Court stands unconvinced that the Supreme Court's decision in *Thuraissigiam* requires dismissal of Plaintiff's due process claim. Given the distinct claims presented in *Thuraissigiam*, the Court finds the decision's narrow holding presents no bar to Plaintiffs' claim.
>
> In *Thuraissigiam*, the respondent argued that due process entitled him to an opportunity to *reapply* for asylum on account of certain alleged defects he identified in the process that led to rejection of his asylum application. [591 U.S. at 138–140]. To understand this claim, the Court first reviews the factual background and procedural posture of the case. Like Plaintiffs in the case before this Court, the respondent in *Thuraissigiam* was placed into expedited removal proceedings after being detained upon his entry to the United States where he was found inadmissible. *Id.* at [114]. Like Plaintiffs here, the respondent applied for asylum. *Id. But unlike Plaintiffs here, the respondent in Thuraissigiam was unable to convince the immigration officer, a supervising officer, or immigration judge that he faced a credible fear of persecution if returned to his home country. Id. at [114]. Having failed to present a bona fide asylum claim, the respondent was subject to "remov[al] from the United States without further hearing or review."* 8 U.S.C. § 1225(b)(1)(B)(iii)(I); *Thuraissigiam*, [591 U.S. at 114]. The respondent then filed a habeas petition through which he sought a writ of habeas corpus, an injunction, or writ of mandamus directing the Department of Homeland Security *to provide him a "new opportunity to apply for asylum and other applicable forms of relief." Thuraissigiam*, [591 U.S. at 114–15]. *He argued that he had been deprived of a meaningful opportunity to establish his credible fear claims and that the wrong standards were applied. Id. But the respondent "made no mention of release from custody." Id.*
>
> The Supreme Court in *Thuraissigiam*, rejected respondent's due process claim. The Court explained that "aliens who arrive at ports of entry ... are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* at [139] (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)). And as to any due process rights concerning their efforts to gain admission, these individuals possess "only those rights regarding admission that Congress has provided by statute." *Id.* at [140]. The Court based this conclusion on the proposition that "[t]he power to admit or exclude aliens is a sovereign prerogative" and that "the Constitution gives the political department of the government plenary authority to decide which aliens to admit, and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." *Id.* at [139] (citation and quotation omitted). With these principles in mind, the Court held that as to his request for admission into the United States, the respondent

had only "a right to a 'determin[ation]' whether he had 'a significant possibility' of 'establish[ing] eligibility for asylum.'" *Id.* at [140] (quoting 8 U.S.C. §§ 1225(b)(1)(B)(ii), (v)). Having been "given that right," the respondent was entitled to no more process in his efforts to gain admission to the United States. *Id.*

704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023), *appeal filed*, No. 24-2801 (9th Cir. May 2, 2025), *quoted in Doe v. Andrews*, No. 25-cv-0333, 2026 WL 797694, at *8 (E.D. Cal. Mar. 23, 2026). In *Doe*, the court concluded:

> … Similarly to *Padilla*, the Petitioner here is also an applicant for admission who received a positive credible fear determination and who challenges only his prolonged detention under § 1225(b)(1) not the merits of the asylum decision itself. [] "Defendants ask the Court to extract from *Thuraissigiam* a broad rule that any inadmissible noncitizen possesses only those due process rights afforded to them by statute, regardless of the nature of their status or the relief they seek. But such conclusion is untethered to the claim in *Thuraissigiam* and the Court's reasoning. *Thuraissigiam's discussion of due process is necessarily constrained to challenges to admissibility to the United States*. This was the sole claim presented and [Thuraissigiam] expressly asked for a chance to *reapply* for asylum and admission. The Court then exclusively analyzed whether a noncitizen applicant for admission has any 'rights regarding *admission'* beyond those set by Congress." …

2026 WL 797694, at *9 (emphasis added). *See also Gao v. LaRose*, 805 F. Supp. 3d 1106, 1110 (S.D. Cal. 2025);[8] *Fils-Aime*, 808 F. Supp. 3d at 223.[9]

---

[8] Following the Supreme Court's decision in *Thuraissigiam*, some district courts have adopted Respondents' reasoning to dismiss or deny habeas petitions in the context of arriving aliens subject to mandatory detention under Section 1225(b)(1). *See Petgrave v. Aleman*, 529 F. Supp. 3d 665, 669 (S.D. Tex. 2021) ("As far as Petitioner is concerned, whatever procedure Congress has authorized is sufficient due process."); *Gonzales Garcia v. Rosen*, 513 F. Supp. 3d 329, 336 (W.D.N.Y. 2021) ("Petitioner is on the threshold of initial entry into the United States and [] he accordingly is not entitled to procedural protections beyond those provided by statute.").
Most courts have ruled otherwise. …
*Gao v. LaRose*, 805 F. Supp. 3d 1106, 1110 (S.D. Cal. 2025).

[9] The complete passage, selectively quoted by the [the government], states that "an alien in [Thuraissigiam's] position has only those rights regarding *admission* that Congress has provided by statute ... [b]ecause the Due Process Clause provides

Absent the availability of § 2241 relief, Petitioner and similarly situated individuals, who have stated a credible and "significant" eligibility for asylum, could be indiscriminately detained for an indeterminate period of time. This does not conform to the Constitution's guarantee of substantive and procedural due process to individuals present in the United States of America. It is respectfully recommended that the Court join the federal District Courts that have concluded that prolonged mandatory detention pending the finality of removal proceedings, without a bond hearing, at some point violates the detainee's right to due process of law. *See Tavurov v. Noem*, ___ F. Supp. 3d ___, 2026 WL 323054, at *4 (W.D. Wash. Feb. 6, 2026); *Tenemasa-Lema v. Hyde*, 810 F. Supp. 3d 244, 256 n.18 (D. Mass. Nov. 25, 2025); *Gao*, 805 F. Supp. 3d at 1100; *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825-26 (W.D. Pa. 2025); *Leke v. Hott*, 521 F. Supp. 3d 597, 603 n.8 (E.D. Va. 2021);[10] *Mbalivoto v. Holt*, 527 F. Supp. 3d 838, 851 (E.D. Va. 2020) ("[S]ome

> nothing more, it does not require review of that determination or how it was made." 591 U.S. at 140 [] (emphasis added). *Thuraissigiam's* rationale is based on the executive's "plenary authority to decide which aliens to admit, and [the] concomitant ... power to set the procedures to be followed in determining whether an alien should be admitted." *Id.* at 139 [] (internal citations omitted). The holding circumscribed only due process rights to challenge admission decisions—in the case of the *Thuraissigiam* petitioner, denial of his asylum application—and left open due process challenges to prolonged detention. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 825 (W.D. Pa. 2025) ("Nowhere in [*Thuraissigiam*] did the Supreme Court suggest that arriving aliens being held under § 1225(b) may be held indefinitely and unreasonably with no due process implications, nor that such aliens have no due process rights whatsoever.") …

*Fils-Aime v. FCI Berlin, Warden*, 808 F. Supp. 3d 218, 223 (D.N.H. 2025).

[10] In support of this conclusion, in *Leke* at footnote 8 the Eastern District of Virginia cites the following cases:

> *See also Kouadio v. Decker*, 352 F. Supp. 3d 235, 241 (S.D.N.Y. 2018) (34-month detention of arriving alien without bond hearing violates due process); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772, No. 3:20-cv-539 (S.D. Cal. 2020) (27-month detention of arriving alien without bond hearing violates due process); *Pierre v. Doll*, 350 F. Supp. 3d 327, 332 (M.D. Pa. 2018) (23-month detention of arriving alien without bond hearing violates due process); *Mbalivoto v. Holt*, No.1:20-cv-827 at 5 (Dkt. 22) (E.D. Va. Aug. 11, 2020) (22-month detention of arriving alien without bond hearing violates due process); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 859 (D. Minn. 2019) (19-month detention of arriving alien without bond hearing violates due process); *Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 442–43 (D. N.J. 2019) (same); *Djelassi v. ICE Field Office Dir.*, 434 F. Supp. 3d 917, 930

constitutionally adequate process must be provided; and the Court concludes, based on *Zadvydas*, *Demore*, and *Thuraissigiam*, that Petitioner is not foreclosed from the relief he seeks with respect to his detention either because he is an entering alien, as opposed to an entered alien, or because there remains a discernable statutory purpose for his detention."); *Kydyrali*, 499 F. Supp. 3d at 772; *Abdi v. Duke*, 280 F. Supp. 3d 373, 393 (W.D.N.Y. 2017) ("The majority of the courts in this Circuit that have considered the issue agree, and this Court finds their reasoning ... persuasive. Section 1225(b) does not permit the indefinite detention of individuals detained under that statute."); *Mashchenko*, 2026 WL 185204, at *3; *Baishymyrov v. Warden of Golden State Annex Det. Facility*, No. 25-cv-01658, 2026 WL 145644, at *6 (E.D. Cal. Jan. 20, 2026); *Sufiiarov v. Warden, Otay Mesa Det. Ctr.*, No. 25-cv-03265, 2026 WL 26079, at *3 (S.D. Cal. Jan. 5, 2026) ("The Court agrees with those courts that have found a noncitizen detained under § 1225(b) for a prolonged period without an individualized bond hearing may assert a constitutional right to due process."); *Arechiga v. Archambeault*, No. 23-cv-0600, 2023 WL 5207589, at *3 (D. Nev. Aug. 11, 2023); *Bermudez Paiz v. Decker*, No. 18-cv-4759, 2018 WL 6928794, at *10 (S.D.N.Y. Dec. 27, 2018) ("Most judges who have squarely faced the question have applied the same logic to § 1225(b), holding that arriving aliens, like criminal aliens, cannot be detained for an unreasonably prolonged period of time without a bond hearing."). *Contra Petgrave v. Aleman*, 529 F. Supp. 3d 665, 667 (S.D. Tex. 2021); *St. Charles v. Barr*, 514 F. Supp. 3d 570, 579 (W.D.N.Y. 2021); *Richards v. Choate*, No. 25-cv-031342025 WL 4474703, at *6 (D. Colo. Dec. 5, 2025); *Mendoza-Linares v. Garland*, No. 21-cv-1169, 2024 WL 3316306, at *2 (S.D. Cal. June 10, 2024).

The Ninth Circuit Court of Appeals has not provided the lower courts with guidance regarding the point at which an immigration detainee's prolonged mandatory detention under § 1225(b) without a bond hearing becomes unconstitutional. The District Courts

---

(W.D. Wash. 2020) (18-month detention of arriving alien without bond hearing violates due process); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1177 (W.D. Wash. 2019) (17-month detention of arriving alien without bond hearing violates due process); *Lett v. Decker*, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018) (10-month detention of arriving alien without bond hearing violates due process).

within the Ninth Circuit's jurisdiction have generally found the test stated in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) applicable with regard to those detained pursuant to § 1225(b), *see*, *e.g.*, *Prabhpreet v. Larose*, 26-cv-393, 2026 WL 310192, at *3 (S.D. Cal. Feb. 5, 2026), although some courts have instead applied the test stated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), *see*, *e.g.*, *Tigranyan v. Warden of California City Detention*, No. 25-cv-01554, 2026 WL 91765, at *5-7 (E.D. Cal. Jan. 13, 2026). Under either test, Petitioner is entitled to a bond hearing to determine whether he would be a flight risk or a danger to the community if released from detention. *Banda* might be considered the more appropriate analysis because Petitioner's detention is under § 1225(b)(1(B)(ii).[11] *See Tavurov*, 2026 WL 323054, at *3-4 (finding the *Banda* test applicable "to determine whether prolonged detention without a bond hearing, [in] a case where the noncitizen is held under § 1225(b), violates procedural due process. … The issue here, different from the question in *Mathews*, is the more fundamental issue of whether any procedure – such as a bond hearing – must be provided.." (internal quotations omitted)).

The *Banda* court considered the following six factors to determine whether continued detention under § 1225(b) without a bond hearing violated the detainee's due process rights:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

385 F. Supp. 3d at 1118, *citing Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019). *See also Sadeqi*, 809 F. Supp. 3d at 1094; *Kydyrali*, 499 F. Supp. 3d at 773-74; *Prabhpreet*, 2026 WL 310192, at *2-3; *Amado v. United States Dep't of Just.*, No. 25-

---

[11] "While the *Mathews* factors may be well-suited to determining whether due process requires a *second* bond hearing, they are not particularly probative of whether prolonged mandatory detention has become unreasonable in a particular case." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019) (emphasis added).

cv-2687, 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025); *Kadir v. LaRose*, 25-cv-1045, 2025 WL 2932654 (S.D. Cal. Oct. 15, 2025).

With regard to the first *Banda* factor, the length of detention, Petitioner has now been detained for fifteen months. Although the length of Petitioner's detention does not, by itself, establish prolonged detention in violation of due process, neither does that length of detention insulate Petitioner's case from constitutional review. The federal district courts have ordered a bond hearing where a petitioner was subject to mandatory detention for a shorter length of time. *See*, *e.g.*, *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (collecting cases); *Amado*, 2025 WL 3079052, at *5 (collecting cases); *Tonoyan v. Andrews*, No. 25-cv-00815, 2025 WL 3013684, at *4 (E.D. Cal. Oct. 28, 2025) ("Petitioner has been detained approximately 11 months. This period ... qualifies as prolonged."); *Gao*, 805 F. Supp. 3d at 1112 ("The Court finds that Petitioner's detention for over 10 months without a bond hearing, in the context of the specific circumstances described above, has become unreasonable and violates due process."). Federal district courts within the jurisdiction of the Ninth Circuit Court of Appeals have found that the total length of detention weighs in the petitioner's favor where it exceeds one year. *See*, *e.g.*, *Singh v. Noem*, ___ F. Supp. 3d ___, 2026 WL 206716, at *5; *Baishymyrov*, 2026 WL 145644, at *7; *Hasan MD v. Warden of the Calif. City Det. Facility*, No. 26-cv-0282, 2026 WL 972658, at *3-4 (E.D. Cal. Apr. 10, 2026), *report and recommendation adopted*, 2026 WL 1051852 (E.D. Cal. Apr. 17, 2026). The Court may reasonably conclude that the first *Banda* factor weighs in favor of Petitioner.

The second *Banda* factor evaluates the potential duration of future detention. Petitioner's application for asylum was filed July 30, 2025, nine months ago. If an immigration judge denies the application and orders Petitioner removed, and Petitioner appeals these decisions to the Board of Immigration Appeals ("BIA"), it will likely take a year for the BIA to reach a decision regarding the denial of asylum and order of removal. Should Petitioner exercise his right to appeal any negative decision by the BIA to the Ninth Circuit Court of Appeals, a decision from the appellate court could take up to two years.

*See Padilla*, 704 F. Supp. 3d at 1173 (explaining that petitioners with bona fide asylum claims "face a median time of five to six months for adjudication of their claim by an [IJ], nearly a year for cases appealed to the BIA, and still longer for judicial review"); *Banda*, 385 F. Supp. 3d at 1119 (finding this factor weighed in the petitioner's favor where a petitioner who had "only recently" appealed the IJ's denial of his case to the BIA faced a process that could "take up to two years or longer"); *Barraza v. ICE Field Off. Dir.*, No. 23-cv-1271, 2023 WL 9600946, at *6 (W.D. Wash. Dec. 8, 2023), *report and recommendation adopted*, 2024 WL 518945 (W.D. Wash. Feb. 9, 2024) (citing the Ninth Circuit Court of Appeals website's timeline for appeals and noting a petitioner who filed their petition for review in the Ninth Circuit a few months prior could be facing two years or more of additional time in custody);[12] *Hong v. Mayorkas*, No. 20-cv-1784, 2021 WL 8016749, at *4 (W.D. Wash. June 8, 2021) (finding this factor favored petitioner because they faced "an additional 15 to 38 months" in detention where they were at the "earliest stages" of pursuing a petition for review before the Ninth Circuit Court of Appeals). Under the government's theory of mandatory detention pending finality of an order of removal, and given the current flood of immigration cases before the BIA and the appellate courts, Petitioner might potentially be detained for an additional one or two years pending the final outcome of his removal proceedings. Therefore, the second *Banda* factor also weighs in favor of Petitioner.

The third factor to be considered examines the conditions of detention. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger the argument that [the noncitizen] is entitled to a bond hearing." *Barraza*, 2023 WL 9600946, at *6 (internal quotations omitted). Petitioner is detained at the Eloy Detention Center, opened in 1994 and designed to imprison people in criminal custody. *See* U.S. DEP'T OF HOMELAND SEC., IMMIGR. & CUSTOMS ENFORCEMENT OFF. OF PRO.

---

[12] At this time the Ninth Circuit Court of Appeals advises that a civil appeal can take six to twelve months from the date the notice of appeal is docketed to being set for oral argument, with another three months to a year before a decision is issued, or four months from the time an appeal is fully briefed until a decision is made if oral argument is not ordered. *See* https://www.ca9.uscourts.gov/general/faq, *last visited* May 1, 2026.

RESP., INSPECTIONS, & DETENTION OVERSIGHT, OFF. OF DETENTION OVERSIGHT COMPLIANCE INSPECTION, ENFORCEMENT & REMOVAL OPERATIONS, PHX. FIELD OFF., ELOY DET. CENTER (2013), *available at*: https://www.ice.gov/doclib/foia/odo-compliance-inspections/eloyDetentionCenterEloyAzNov5_7_2013.pdf. (last visited Apr. 20, 2026). The facility has since evolved into an ICE detention facility. Concerns have been raised with regard to the conditions of confinement at the Eloy Detention Center. *See* U.S. DEP'T OF HOMELAND SEC., OFF. FOR CIVIL RIGHTS & CIVIL LIBERTIES, SUMMARY OF CRCL'S RECOMMENDATIONS & ICE'S RESPONSE, ELOY DET. CENTER (2024), *available at*: https://www.documentcloud.org/documents/25866584-24-1216-crcl-close-summary-ice-eloy-detention-center-508/#document (last visited Apr. 20, 2026).

The conditions under which Petitioner is detained closely resemble penal confinement. Petitioner is not able to come and go from the detention center. Visitation is limited, the specific times that visitors are allowed are "subject to change," and visitors are searched. Inmate mail is screened. The detention center determines when Petitioner is able to exercise, what he may eat, and what belongings he may possess. The Court may reasonably conclude that the third *Banda* factor weighs in favor of Petitioner.

The fourth and fifth *Banda* factors examine the delays in the removal proceedings caused by the detainee and delays in the removal proceedings caused by the government. There is no evidence that Petitioner has engaged in any delay of his proceedings. There is no indication that the government has caused any delay in Petitioner's proceedings.

The sixth prong of the *Banda* test considers the likelihood that Petitioner's removal proceedings will result in a final order of removal. In considering the "likelihood that the removal proceedings will result in a final order of removal," the court considers "whether the noncitizen has asserted any defenses to removal." *Banda*, 385 F. Supp. at 1120 (citations omitted). Where the petitioner has asserted a good faith challenge to removal, "the categorical nature of the detention will become increasingly unreasonable." *Id.* (internal quotations omitted), *cited in Kadir*, 2025 WL 2932654, at *5. It is entirely possible that Petitioner will be awarded relief from removal, i.e., asylum of withholding of

removal. Under § 1225(b)(1)(B)(v), "the term 'credible fear of persecution' means that there is a significant possibility taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum." In this matter, an asylum officer interviewed Petitioner, found him credible, and found a significant possibility that he had a claim for asylum. As noted by Petitioner's counsel, this "formal, adjudicated finding by a trained asylum officer … reflects a determination by the United States government—not merely an applicant's assertion—that the individual faces a plausible risk of persecution or torture in the country of removal." (ECF No. 1 at 12-13). The sixth prong of the *Banda* test weighs in favor of Petitioenr.

Moreover, even if Petitioner is denied asylum and ordered removed, and that decision is affirmed by the BIA and the Ninth Circuit Court of Appeals, there is little likelihood Petitioner would be removed to Iran within the time-frame found constitutional under *Zadvydas v. Davis*. As Petitioner's counsel notes, and Respondents do not dispute:

> … Civil immigration detention is constitutionally permissible only to serve legitimate governmental purposes: securing appearance at proceedings and protecting public safety. *Zadvydas*, 533 U.S. at 690. Neither purpose is served by Petitioner's continued detention. As set forth above, removal to Iran is not reasonably foreseeable. The United States cannot arrange for a noncitizen's removal to a country with which it is actively at war. ICE cannot obtain travel documents from a government it is bombing. Detaining Petitioner for the purpose of eventual removal to Iran, while the United States conducts active military operations there, is not rationally related to any legitimate governmental objective — it is arbitrary confinement in the constitutional sense that *Zadvydas* forbids. The government cannot simultaneously wage war against Iran and assert a legitimate interest in detaining an Iranian national for the purpose of removing him there.

(ECF No. 1 at 17). The District of Arizona has recently ordered Iranian nationals under a final order of removal released from detention because their removal is not likely in the reasonably foreseeable future. *See Eshaghian v. Howard*, No. 25-cv-04141, 2026 WL 63451 (D. Ariz. Jan. 8, 2026); *Zamani-Zadeh v. Figueroa*, No. 25-cv-03578, 2025 WL 4058337 (D. Ariz. Nov. 5, 2025). *See also Nerssession v. Noem*, No. 26-cv-00636, 2026

WL 1084841, at *6 (C.D. Cal. Apr. 16, 2026); *Kazemzadeh v. United States*, No. 25-cv-01941, 2026 WL 905755, at *3 (D. Nev. Apr. 1, 2026); *Ghasedi v. Wamsley*, No. 25-cv-01984, 2025 WL 3699705, at *5 (W.D. Wash. Dec. 1, 2025), *report and recommendation adopted*, 2025 WL 3697208 (W.D. Wash. Dec. 19, 2025); *S.F. v. Bostock*, No. 25-cv-01084, 2025 WL 2841022, at *4 (D. Or. Oct. 7, 2025).

Notably, one of the *Matthews* factors is consideration of "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement," i.e., a bond hearing, "would entail." 424 U.S. at 335. The government's interest in Petitioner's detention is to ensure that Petitioner appears for all of his immigration proceedings, i.e., that he is not a flight risk, and that he is not a danger to the community. Petitioner has not committed any crime and faces no charges and there is no basis for finding him a danger to the community. Petitioner has a substantial interest in appearing for all of his immigration proceedings and he is, therefore, not a flight risk. Petitioner has a United States citizen familial sponsor who will ensure he does not become an economic burden on the citizens of the United States.

If the Court finds a bond hearing is required, the question of which party bears the burden of proof at a bond hearing in the context of § 1225(b) detention should be answered. This is not a question clearly resolved by the federal courts at this time. The Supreme Court has stressed that "due process is flexible" and "calls for such procedural protections as the particular situation demands." *Jennings*, 583 U.S. at 314, 138.

Some district courts within the Ninth Circuit have concluded that at bond hearings involving those detained for a prolonged period of time pursuant to § 1225(b), without an individualized finding of whether they should be released on bond pending the finality of their removal proceedings, the government bears the burden of establishing the detainee should not be released on bond because they are a flight risk and/or a danger to the community. *See Sadeqi*, 809 F. Supp. 3d at 1095; *Gao*, 805 F. Supp. 3d at 1112; *Chenghong Xie v. Larose*, No. 3:26-cv-01116, 2026 WL 836351, at *2 (S.D. Cal. Mar. 26, 2026); *Kadir*, 2025 WL 2932654, at *6; *Idiev v. Warden of the Golden State Annex Det. Facility*,

No. 25-cv-01030, 2025 WL 3089349, at *6 (E.D. Cal. Nov. 5, 2025) (ordering bond hearing where "the government must justify Petitioner's continued confinement under § 1225(b) by clear and convincing evidence that Petitioner is a flight risk or a danger to the community"). The Court could join these courts and, applying the "general principles of procedural due process," place the burden of establishing the elements warranting detention on the government rather than requiring Petitioner to prove those elements in the negative. *See Fils-Aime*, 808 F. Supp. 3d at 224; *Gao*, 805 F. Supp. 3d at 1112; *Sandesh v. LaRose*, No. 26-cv-0846, 2026 WL 622690, at *5 (S.D. Cal. Mar. 5, 2026), *citing*, *e.g.*, *Banda*, 385 F. Supp. 3d at 1120; *Belqasim v. Bostock*, No. 25-cv-01282, 2025 WL 3466971, at *10 (W.D. Wash. Oct. 28, 2025), *report and recommendation adopted*, 2025 WL 3170929 (Nov. 13, 2025); *A.E. v. Andrews*, No. 25-cv-00107, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). *See also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 n.4 (9th Cir. 2022) (Wardlaw, J., dissenting, discussing the equities of placing the burden on the government in the context of detention under § 1226). The Court could also order that in the event Petitioner is determined not to be a danger to the community and to not be a flight risk, the IJ must consider Petitioner's financial circumstances or alternative conditions of release when determining any bond. *See Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017) ("Plaintiffs are likely to succeed on their challenge under the Due Process Clause to the government's policy of allowing ICE and IJs to set immigration bond amounts without considering the detainees' financial circumstances or alternative conditions of release."); *Black v. Decker*, 103 F.4th 133, 138 (2d Cir. 2024) (The district court "correctly directed the immigration judge ("IJ"), in setting his bond and establishing appropriate terms for his potential release, to consider his ability to pay and alternative means of assuring appearance.").

It is further noted that in the Immigration Court's order finding Petitioner must be detained, without receiving any evidence or conducting a hearing, the immigration judge shifted the burden of proof to Petitioner and found he was a flight risk. Given the record evidence, that Petitioner has no criminal history, he has been found by an asylum officer

to have a credible fear of persecution if returned to Iran, he has a vested interest in appearing in his asylum and removal proceedings, and he has a United States citizen sponsor in the United States, it is unlikely the government could meet its burden of showing by a preponderance of clear and convincing evidence that Petitioner poses a flight risk if released from detention. The immigration court predetermined that it is without jurisdiction to grant Petitioner release on bond, and also predetermined that Petitioner is a flight risk. It is unlikely that Petitioner will be given an *individualized* bond hearing before a neutral arbiter. Without conducting a hearing or accepting any evidence the immigration court found Petitioner to be a flight risk and, therefore, it has shown itself to be biased and to have predetermined that issue.

Generally, when granting § 2241 petitions based on a due process violation in immigration proceedings the federal courts have ordered bond hearings conducted before an immigration judge as required by the petitioner's right to be free of detention absent procedural due process. However, "[h]Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus. The court is free to fashion the remedy as law and justice require[.]" *Sanders v. Ratelle*, 21 F.3d 1446, 1461 (9th Cir. 1994) (internal quotation marks and citations omitted).

In circumstances such as those presented in the instant petition, the Court could order Petitioner's immediate release from detention rather than order he be given another bond hearing, given that it is likely another bond hearing will not produce a result commensurate with Petitioner's constitutional right to due process.

> … given the current administration favoring detention of noncitizens, given the due process concerns already evident in Petitioner's immigration court proceedings and the record indications that Petitioner is neither a flight risk nor would he be a danger to the community if release. When a noncitizen has demonstrated a profound liberty interest in his freedom from civil detention and a concrete, ongoing deprivation of that liberty without adequate process provided by Respondents to justify his detention,  "due process concerns weigh heavily in favor of granting immediate release." *Cruz-Reyes [v.*

*Bondi*], ___ F. Supp. 3d at ___ 2026 WL 332315, at *5 [S.D. Tex. Feb. 3, 2026].

*Mendoza*, 2026 WL 809441, at *9.

### IV.    Conclusion

Petitioner's detention for fifteen months without a bond hearing, under the circumstances and equities of this case, has become unreasonable and violates Petitioner's Fifth Amendment right to due process of law. Petitioner is entitled to at least a prompt and individualized bond hearing, at which Respondents must justify his continued detention by a showing of clear and convincing evidence that Petitioner would pose a flight risk or a danger to the community if released. Alternatively, the Court could exercise its discretion and order Petitioner be released from detention on recognizance, under terms of supervision, or on bond.

Accordingly,

**IT IS RECOMMENDED that** the petition for habeas relief pursuant to § 2241 (ECF No. 1) be **granted**, and the Court order that within fourteen (14) days of the date the order is issued Petitioner given a bond hearing before a neutral adjudicator at which hearing the government must bear the burden of showing that Petitioner should not be released on bond because he is a flight risk and a danger to the community. If the Court orders a bond hearing it should further order that the adjudicator prepare a written, explained decision, rather than checking boxes on a form, describing the clear and convincing evidence proffered by the government that the adjudicator considered when reaching their decision.

Alternatively, it is recommended that the Court order that within seven (7) days of the date the petition is granted Petitioner be released on bond or under supervision or on recognizance.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. Rule 72(b), Federal Rules of Civil Procedure, provides that the parties shall have fourteen (14)

days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Pursuant to Rule 7.2(e)(3) of the Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed ten (10) pages in length. Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. *See United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 4th day of May, 2026.

Camille D. Bibles
United States Magistrate Judge